IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GENERAL PARTS, INC., | * |
| Plaintiff, | * |
| vs. | *   Case No.: 2:07-cv-740-MHT |
| ROBERT J. SCOTZ, | * |
| Defendant. | * |

**PLAINTIFF GENERAL PARTS, INC.'S MEMORANDUM BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW General Parts, Inc., Plaintiff in the above-styled matter, and submits the following Memorandum Brief in support of its Motion for Summary Judgment.

**I.   SUMMARY OF THE CASE**

This is a diversity case regarding the theft of monies. Plaintiff General Parts, Inc. (hereinafter "GPI"), a North Carolina corporation doing business as CARQUEST in Montgomery, Alabama, brought this action against former employee Robert J. Scotz alleging that he stole monies from GPI during this employment there. GPI asserts three state law causes of action for conversion, unjust enrichment, fraud and deception and a fourth cause of action related to Scotz's fraudulent transfer of property. Scotz, who is *pro se*, did not file an *Answer*, but filed a *Motion for Injunctive Relief* regarding the fourth count, which the Court denied. This motion is now ripe for consideration.

**II.   SUMMARY OF UNDISPUTED FACTS**

    A.   THE PARTIES

        1.   GENERAL PARTS, INC.

General Parts, Inc. is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Raleigh, North Carolina. (See Exhibit "1" -

Affidavit of Robert McCort ¶3). Until January 2007, GPI, doing business as CARQUEST, maintained a distribution center in Montgomery, Alabama. (McCort Aff. ¶¶4,7).

    2.    **ROBERT J. SCOTZ**

Scotz was employed by GPI as an account manager in the Montgomery office from June 1993 until January 2007. (McCort Aff. ¶¶5-7). When the Montgomery office closed in January 2007, Scotz was transferred to the Raleigh, North Carolina office. (McCort Aff. ¶7). However, because Scotz's family was unable to relocate to North Carolina, he was allowed to work in the old Montgomery office one week out of each month from January 2007 until his eventual termination on July 3, 2007. (McCort Aff. ¶7).

    B.    **DISCOVERY OF THE THEFT**

On June 28, 2007, GPI's Director of Accounts Payable Janet Higgins discovered an unauthorized check written on a GPI bank account. (McCort Aff. ¶8). Upon investigation, it was determined that a check in the amount of $18,453.35 had been made payable to Scotz, endorsed by Scotz and deposited in Scotz's personal bank account. (McCort Aff. ¶8; See also Attachment A to McCort Aff. Check 7228). GPI stopped payment on the check prior to the funds becoming available for withdrawal. (McCort Aff. ¶8).

On July 3, 2007, Robert McCort, Director of Loss Prevention for GPI, confronted Scotz regarding the $18,453.35 check. (McCort Aff. ¶9). After initially denying the allegations, Scotz eventually admitted forging the check and depositing it into his account. (McCort Aff. ¶9; See also Exhibit "2" - Written Statement of Robert Scotz). Scotz was suspended that day and terminated shortly thereafter. (McCort Aff. ¶9).

C.    CRIMINAL PROCEEDINGS

Upon further investigation, GPI's internal auditors determined that between March 2005 and March 2007, Scotz fraudulently wrote at least 21 GPI checks. (McCort Aff. ¶10). The checks discovered were as follows:

| CAPTURE DATE | CHECK NUMBER | PAYEE | AMOUNT |
| --- | --- | --- | --- |
| 3/4/05 | 5594 | Robert Scotz | $6,434.79 |
| 6/21/05 | 6001 | Robert Scotz | $6,560.79 |
| 11/3/05 | 6002 | Robert Scotz | $5,036.97 |
| 12/22/05 | 6003 | Robert Scotz | $7,741.79 |
| 1/23/06 | 6004 | Robert Scotz | $9,896.34 |
| 4/17/06 | 6006 | Robert Scotz | $9,050.63 |
| 6/1/06 | 6007 | Robert Scotz | $2,751.71 |
| 6/9/06 | 6008 | Robert Scotz | $2,900.00 |
| 8/30/06 | 6009 | Robert Jay Scotz | $16,500.00 |
| 10/25/06 | 6010 | Robert Scotz | $10,150.00 |
| 1/18/07 | 6011 | Robert Scotz | $9,186.43 |
| 1/9/07 | 6012 | Robert Jay Scotz | $8,360.39 |
| 1/18/07 | 6013 | Fidelity Bank | $43,134.91 |
| 12/4/06 | 6015 | Robert J. Scotz | $18,000.00 |
| 1/23/07 | 6017 | Robert Scotz | $9,186.44 |
| 1/31/07 | 6018 | Robert Jay Scotz | $11,795.97 |
| 2/6/07 | 6019 | GMAC | $21,773.50 |
| 2/20/07 | 6020 | Robert Scotz | $5,334.23 |
| 3/9/07 | 6021 | Robert Scotz | $9,040.00 |
| 3/16/07 | 6022 | Robert Scotz | $7,587.99 |
| 6/26/07 | 7228 | Robert J Scotz | $18,453.35 |
| TOTAL | | | $238,876.23 |

(McCort Aff. ¶10; See also Exhibit "3" - Affidavit of Carissa McCune with Forged Checks Attachments thereto; See also Exhibit "4" - Affidavit and Letter of Circumstance of Shane Smith).

With the exception of checks 6013 and 6019 which were written to other payees to pay personal debts owed by Scotz, each check was endorsed by Scotz and deposited into his personal Regions Bank Account. (See Forged Checks). The 21 checks fraudulently written by Scotz totaled $238,876.23. (McCort Aff. ¶13). However, because GPI was able to stop payment on the last check in the amount of $18,453.35, the amount Scotz was actually able to steal from GPI was $220,422.88. (McCort Aff. ¶13).

Scotz was subsequently arrested on September 11, 2007 for Theft of Property in the First Degree and Criminal Possession of a Forged Instrument in the Second Degree. (See Exhibit "5" - Warrant of Arrest and Certificate of Execution for Theft of Property I; See also Exhibit "6" - Warrant of Arrest and Certificate of Execution for Criminal Possession of a Forged Instrument II). After Scotz "confessed to writing [20] check[s] and stealing the money", Scotz pleaded guilty to the crimes as charged and was sentenced to prison. (See Exhibit "7" - Affidavit of Dave Murley regarding Theft of Property I; See also Exhibit "8" - Affidavit of Dave Murley regarding Criminal Possession of a Forged Instrument II; See also Exhibit "9" - Transcript of Guilty Plea and Sentencing; See Also Exhibit "10" - Case Action Summary for Case Number CC-07-1728).

D.   TRANSFER OF TITLE

During the criminal court proceedings, Scotz admitted using some of the funds to pay off his mortgage. (Transcript page 11 at lines 6-15). According to Autauga County Probate Court records, Fidelity Bank was the holder of Scotz's $72,000.00 mortgage on the home he owned with his wife at 615 Shelia Boulevard in Prattville, Alabama. (See Exhibit "11" - Assignment of Mortgage). Forged check number 6013, which cleared the bank on January 18, 2007, was made payable to Fidelity Bank for $43,134.91. (See Forged Check Number 6013). Shortly thereafter, Fidelity Bank filed a Satisfaction of Mortgage on the Shelia Boulevard property on March 22, 2007.

(See Exhibit "12" - Satisfaction of Mortgage).  On June 4, 2007, less than a month before GPI discovered Scotz's theft, Scotz transferred his one-half interest in the Shelia Boulevard property to his wife for consideration of $100.00.  (See Exhibit "13" - Warranty Deed).

### III.   ARGUMENTS AND CONCLUSIONS OF LAW

#### A.   STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law."  Rule 56(c), *Federal Rules of Civil Procedure*; See also *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996).  "The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact."  *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  That burden may be satisfied either by demonstrating that there is no evidence of a dispute of material fact or by demonstrating that the nonmoving party has failed to make a showing "sufficient to establish the existence of an element essential to the [nonmovant]'s case, and on which that party will bear the burden of proof at trial."  See *Celotex*, supra, 477 U.S. at 322.  It is well-settled that the Court, in passing on a motion for summary judgment, must view all evidence and resolve all reasonable inferences in favor of the nonmoving party.  *Zipperer v. City of Fort Myers*, 41 F.3d 619, 622 (11th Cir. 1995).

Once the movant has met its burden under Rule 56(e) by showing that there are no genuine issues of material fact or that the nonmovant lacks an essential element, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court noted further "[t]hat the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  In the event the nonmovant fails to advance sufficient evidence to support a jury finding for the nonmovant, the Court may properly grant summary judgment.  Id. at 249-50.

### B.  CONVERSION

A plaintiff can establish conversion by demonstrating:

(1) a wrongful taking,
(2) an illegal assumption of ownership,
(3) an illegal use or misuse, or
(4) a wrongful detention.

*Hanner v. Metro Bank and Protective Life Ins. Co.*, 952 So.2d 1056, 1070 (Ala. 2006)(quoting *Strickland v. Kafko Mfg., Inc.*, 512 So.2d 714, 716 (Ala. 1987).

There can be no dispute that Scotz converted GPI's funds.  Not only does GPI personnel assert that Scotz forged the checks, Scotz admitted to doing so during the criminal proceedings. "Checks, and the property rights represented thereby, may be the subjection of a conversion action."  See *Crown Life Ins. Co. v.* Smith, 657 So.2d 821, 823 (Ala. 1994)(citing Alfa *Mutual Ins. Co. v. Veal*, 622 So.2d 1292 (Ala. 1993).  In *Crown*, an employee of a life insurance company forged refund checks which were due to policyholders.  The Alabama Supreme Court addressed that forgery as follows:

> [The employee-forger] forged the [plaintiffs'] signature onto the [plaintiffs' life insurance] premium refund checks, received the funds represented by those checks, and deposited those funds into his own corporation's accounts.  These refund checks were specific, identifiable property that represented funds owed from [the defendant life insurance company] to the [plaintiffs]. [The employee-forger] wrongfully exercised dominion over the checks through his forgeries upon the checks and his retention of the funds; therefore, [the employee-forger] converted these checks. See Alfa *Mutual Insurance Co. v. Veal*, 622 So.2d 1292 (Ala. 1993)

*Crown*, supra, 657 So.2d at 823-24.

Similarly, here, Scotz admitted to forging GPI checks for his own use under oath during his guilty plea. The undisputed evidence in the form of the endorsed checks, the testimony of GPI personnel, the criminal prosecution documents, as well as Scotz's guilty plea clearly establishes that Scotz converted property belonging to GPI. Accordingly, GPI is entitled to summary judgment as to that count.

### C.    UNJUST ENRICHMENT

Similarly, with respect to the unjust enrichment count, GPI is entitled to summary judgment. A claim for unjust enrichment is established when "facts can be proved which show that defendant holds money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud." *Davis v. Sterne, Agee & Leach, Inc.*, 965 So.2d 1076, 1093 (Ala. 2007)(quoting *Foshee v. General Tel. Co. of Southeast*, 322 So.2d 715, 717 (1975). The Alabama Supreme Court has further held that unjust enrichment exists if "the recipient of the benefit...engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply v. Mantiply*, 951 So.2d 638, 654-55 (Ala. 2006)(quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843 (Ala. 2004).

Again, it is undisputed that Scotz was not entitled to the benefit fo the monies he stole from GPI when he forged the more than 20 checks. Further, Scotz was able to forge those checks as a result of the confidential relationship he enjoyed as an account manager for GPI. There can be no dispute that said monies were the rightful property of GPI, but that Scotz gained them as a result of his criminal and unconscionable activity. Accordingly, GPI is similarly entitled to summary judgment as to this count.

**D.    FRAUD AND DECEPTION**

As to the fraud and deception count, GPI is similarly entitled to summary judgment against Scotz. There can be no dispute that the Scotz committed actionable fraud against GPI. The Alabama Supreme Court set out the elements of fraud as follows:

> (1)    a misrepresentation of a material fact,
> (2)    made willfully to deceive, recklessly, without knowledge, or mistakenly,
> (3)    that was reasonably relied on by the plaintiff under the circumstances, and
> (4)    that caused damage as a proximate consequence.

*McCutchen Co., Inc. v. Media General, Inc.*, 2008 WL 204449 *3 (Ala. 2008)(quoting *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001).

The Court of Civil Appeals addressed the matter further:

> A fraud claim may involve an alleged affirmative misrepresentation of a material fact or an alleged concealment of a material fact for which there is a duty to disclose. *Section 6-5-101, Ala. Code 1975*, which addresses fraud by misrepresentation, provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud."

*Brown v. K&V Automotive, Inc.*, 946 So.2d 458, 464 (Ala.Civ.App. 2006).

Without question, Scotz's failure to disclose that he was forging GPI checks and stealing GPI funds was misrepresentation of a material fact. Had GPI been aware of Scotz's criminal activity, they could have taken steps to safeguard their funds. There can be no question that he did so to deceive GPI, that GPI reasonably relied on Scotz to not steal GPI funds and that GPI was damaged as a result thereof.

Further, because of the employment relationship between Scotz and GPI, Scotz had a duty to GPI. "A fiduciary relationship is a confidential relationship in which one person is obligated to act in another person's best interests." *Brushwitz v. Ezell*, 757 So.2d 423, 431 (Ala. 2000). "The principal-agency relationship is fiduciary in nature and imposes upon the agent a duty of loyalty,

good faith, and fair dealing." *Baron v. Scroggins*, 910 So.2d 780, 786 (Ala.Civ.App. 2005)(quoting *Sevigny v. New South Fed. Sav. & Loan Ass'n*, 586 So.2d 884, 887 (Ala. 1991).

Accordingly, GPI is entitled to summary judgment as to this count as well.

### E.  WRONGFUL TRANSFER OF TITLE

During the criminal proceedings, Scotz admitted that he used the stolen funds to pay off the $72,000.00 mortgage on his home. Check Number 6013 was paid to Scotz's mortgage holder Fidelity Bank in the amount of $43,134.91 in January 2007 to satisfy the mortgage on his home at 615 Shelia Boulevard.  Less than a month before the theft was discovered, Scotz, for consideration of only $100.00, transferred his one-half interest in the Shelia Boulevard home to his wife.  This constitutes a fraudulent transfer and should be set aside.

The *Alabama Fraudulent Transfer Act*, codified at *Ala. Code* §8-9A-1 et seq. dictates that:

> (a) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.

The subject transfer here was clearly accomplished to protect the Scotz home from his creditor, here GPI.  There can be no question that the alleged $100.00 consideration was inadequate.  The Alabama Supreme Court considered inadequacy of consideration as follows:

> Generally, inadequacy of consideration is only a "badge" or indicium of fraud.  Where, however,  the consideration is substantially or grossly inadequate, fraud may be inferred as a matter of law from inadequacy alone.

Quoting *J.C. Jacobs Banking Co., Inc. v. Campbell*, 406 So.2d 834, 844 (Ala. 1981).

Further, the money Scotz stole from GPI went directly from GPI to Fidelity Bank to accomplish the satisfaction of the mortgage. In *Ammons v. Coffee County*, 716 So.2d 1227 (Ala.Civ.App. 1998), after a bookkeeper was convicted of theft from her employer, the employer sued the bookkeeper's husband for unjust enrichment as he benefitted from the stolen funds.  The

Court upheld the verdict against the husband after finding that the husband used the stolen funds to make certain purchases.

The facts are similar here. There is no dispute that Scotz used stolen funds from GPI to satisfy the mortgage on his Shelia Boulevard home shortly before transferring his interest to his wife. This all happened less than one month before GPI discovered Scotz's criminal activity. Absent the transfer, GPI would without question be entitled to a lien on the property. Accordingly, GPI is entitled to have this fraudulent transfer to Scotz's wife set aside.

### F.  COMPENSATORY DAMAGES

As a result of Scotz actions, GPI is entitled to recover $220,422.80, the amount of the checks Scotz forged that was not otherwise recovered by GPI.

*Ala. Code* §7-3-420 states, in pertinent part, as follows:

> (a) An instrument is converted under circumstances which would constitute the conversion under personal property law....
> (b) In an action under subsection (a), the *measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.*

(Emphasis added).

Here, there were 20 converted checks which bore a face value of $220,422.88. That amount represents the actual amount wrongfully gained by Scotz and lost by GPI. Accordingly, GPI is entitled to judgment in that amount.

### IV.  CONCLUSION

Based on the undisputed facts presented herein, GPI is entitled to summary judgment as a matter of law as to each count alleged. Further, GPI is entitled to compensatory damages in the amount of $220,422.88 as well as an order setting aside the transfer of the Shelia Boulevard property to Scotz's wife and other relief as this Court may deem appropriate.

RESPECTFULLY SUBMITTED THIS 4TH DAY OF AUGUST, 2008.

          GENERAL PARTS, INC.,
          Plaintiff,

          By: /s/ James R. Seale
          James R. Seale (SEALJ3617)
          HILL, HILL, CARTER,
          FRANCO, COLE & BLACK, P.C.
          Post Office Box 116
          Montgomery, Alabama 36101-0116
          (334) 834-7600
          (334) 263-5969 - fax
          E-mail: jrs@hillhillcarter.com
          Counsel for Plaintiff
          wwm/6630.0177/f:GPI Brief.wpd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing *Plaintiff General Parts, Inc.'s Memorandum Brief in Support of Motion for Summary Judgment* with the Clerk of the Court for the United States District Court, for the Southern District of Alabama, using the CM/ECF system and that I have this date served a true and correct copy of the aforementioned upon Robert Jay Scotz, c/o Montgomery County Detention Facility, 250 South McDonough Street, Montgomery, AL 36104 by placing same in the United States Mail, postage prepaid and properly addressed this the 4th day of August 2008.

          /s/ James R. Seale
          Of Counsel