IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GENERAL PARTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:07-cv-740-MHT |
| ) | [wo] |
| ROBERT J. SCOTZ ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 12, filed October 17, 2007). Pending before the Court is Plaintiff's *Motion for Summary Judgment* and brief in support (Docs. 39-40, filed August 4, 2008). For good cause, it is the Recommendation of the Magistrate Judge the Motion for Summary Judgment be granted.

### I.   PARTIES

Plaintiff General Parts, Inc. ("GPI" or "Plaintiff") is a North Carolina corporation whose principal place of business is in Raleigh, North Carolina.

*Pro se* defendant, Robert J. Scotz ("Scotz" or "Defendant") is a resident of Prattville in Autauga County, Alabama located within the Middle District of Alabama.[1]

---

[1]   Scotz' current location is unknown to this Court and he did not enter a notice of change of address. The Court is aware Scotz entered a guilty plea in the underlying criminal

## II.   JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a) (Diversity Jurisdiction).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III.   NATURE OF THE CASE & MOTION FOR SUMMARY JUDGMENT

GPI initiated this action on August 17, 2007.  *See* Doc. 1, "Complaint."  GPI filed an amended complaint on October 22, 2007.  *See* Doc. 18, "Amended Complaint."  Scotz was an employee of Carquest and GPI is the parent company of Carquest.  GPI alleges Scotz misappropriated, stole, and/or wrongfully converted for his own use and benefit funds of GPI in the amount of $238,876.23.  GPI asserts claims for conversion, unjust enrichment, and fraud and deception.  *Id*. at ¶¶ 12-20.  Additionally, GPI avers Scotz and his wife then used the misappropriated and stolen funds to payoff the mortgage to their house.  Scotz then transferred his interest in the house and property to his wife, Elaine Folmar Scotz in June 2007.  *Id*. at ¶¶ 21-28.  GPI asserts this as a fraudulent transfer of property claim.  *Id*.  GPI requests a monetary judgment for the $238,876.23 as well as an order setting aside as void Scotz's transfer of his property to his wife.  GPI also notes Scotz gave a signed confession to Detective John Hall of the Montgomery Police Department admitting to writing all the checks.  *Id*. at ¶ 27.

---

action and was sentenced on June 16, 2008.  *See* Doc. 39, Exhibit 9.  However, Scotz address of record is allegedly the residence of Scotz' wife.  Therefore, the Court determines Scotz has received adequate notice of the pending motion for summary judgment.

Scotz filed his answers on October 15, 2007 and November 5, 2007 to the Complaint and Amended Complaint. *See* Doc. 9, "A Response to Summons" and Doc. 26, "A Response to Summons." In his responses, Scotz opposes GPI's request to set aside as void the transfer of his one half interest in property to his wife. *Id*. He denies the transfer was an attempt to defraud GPI or any other creditor. *Id*. Scotz does not address any of the remaining allegations. *Id*.

On the same date as his first "Response," Scotz also filed this request for an injunction. *See* Doc. 10, "A Motion for an Injunction." In the motion, Scotz petitioned the Court to grant an injunction to protect his assets and the assets of his wife including banking accounts, checking accounts, savings accounts, stock, retirement funds, and the transfer of his interest in the real property to his wife. *Id*. In essence, he requested the Court prohibit "any future litigation or attack on/or concerning the above assets." *Id*. at p. 2. On November 30, 2007, the Court denied the request for injunctive relief. *See* Doc. 29, "Order Adopting Report and Recommendation."

On August 4, 2008, GPI filed this motion for summary judgment. *See* Docs. 39-40. In the motion, GPI requests summary judgment on its claims against Scotz stating there are no material facts at issue. *See* Doc. 40 generally. The Court issued a show cause order wherein Scotz should file his response to the motion on or before August 25, 2008. *See* Doc. 41. Scotz did not respond.[2] Therefore, the Court reviews the Motion to Dismiss on the

---

[2] *Supra* n. 1.

merits without the benefit of a responsive pleading.

## IV. STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id*. at 249. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*,

477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly

probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted).  Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43.  Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted.  *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.  In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Id*. at 322, 106 S.Ct. at 2552.

In addition, all litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure.  Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an

otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## V.   DISCUSSION AND ANALYSIS

GPI urges the Court to grant summary judgment in its favor on all four claims. The Court has diversity jurisdiction, therefore it must apply state substantive law and federal procedural law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As such, the Court looks to Alabama law for the substantive guidance.

**A.   Conversion**

GPI asserts a claim for conversion of its funds since Scotz forged the checks made out to himself. To establish a claim for conversion, GPI must present proof of "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Newson v. Protective Indus. Ins. Co. of Ala.*, 890 So.2d 81, 88 (Ala. 2003) (citations omitted). "Possession of a chattel obtained through fraud, artifice, stealth, or trickery without consent of the owner implied or expressed, is wrongful and will support an action for the conversion of the chattel." *Id*. (quoting *Ford Motor Credit Co. v. Byrd*, 351 So.2d 557, 560 (Ala. 1977)). Moreover, money may be subject to a conversion claim when there is an obligation to keep it intact. *Id*.

A check, while representative of money, is a negotiable instrument. *See* ALA. CODE § 7-3-104 (2008). "An instrument is converted under circumstances which would constitute conversion under personal property law." ALA. CODE § 7-3-420 (2008). Therefore, checks

may be the subject of a conversion action. *Crown Life Ins. Co. v. Smith*, 657 So.2d 821, 823 (Ala. 1994) (citing *Alfa Mut. Ins. Co. v. Veal*, 622 So.2d 1292 (Ala. 1993)).

In the related criminal proceedings, Scotz pled guilty to the two count indictment for theft of property and criminal possession of a forged instrument. *See* Doc. 39, Exhibit 9, Transcript of Guilty Plea and Sentencing Hearing. Scotz confessed to forging $238,876.23 in checks Scotz wrote to himself while working for Carquest. *Id*. The final check had a stop payment on it therefore Scotz only obtained $220,422.88. *Id*. From Scotz' guilty plea, it is clear GPI has established the necessary requirements for summary judgment on a conversion claim. There is no material fact at issue since Scotz has a criminal conviction for forging checks while at Carquest. Therefore, summary judgment is due to be granted as to conversion.

**B.     Unjust Enrichment**

Under Alabama law, to establish a claim for unjust enrichment, defendant must hold money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud. *Davis v. Sterne, Agee and Leach, Inc.*, 965 So.2d 1076, 1093 (Ala. 2007); *Scrushy v. Tucker*, 955 So.2d 988, 1011 (Ala. 2006); *Dickinson v. Cosmos Broad. Co.*, 782 So.2d 260, 266 (Ala. 2000). The retention of a benefit is unjust if "the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Mantiply v. Mantiply*, 951 So.2d 638, 654-55 (Ala. 2006) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843

(Ala. 2004)) (internal modifications omitted).

Scotz pleaded guilty to theft of property and criminal possession of a forged instrument, therefore he cannot dispute that he engaged in unconscionable conduct when he forged and cashed the checks he wrongfully made payable to himself.  He clearly received a benefit of $220,422.88 in monies to which he was not entitled.  It would be unconscionable to permit Scotz to retain the benefit of monies he obtained by fraud.  Summary judgment must issue as to the unjust enrichment claim.

**C.**     **Fraud and Deception**

GPI asserts a claim for fraud and deception.  Two types of fraud exist under Alabama statutory law.  "A fraud claim may involve an alleged affirmative misrepresentation of a material fact or an alleged concealment of a material fact for which there is a duty to disclose."  *Brown v. K&V Automotive, Inc.*, 946 So.2d 458 (Ala. Civ. App. 2006).

First, misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.  ALA. CODE § 6-5-101 (2008). Under common law, the elements of fraud are (1) false representation, (2) of a material existing fact, (3) reasonably relief upon by the plaintiff, (4) who suffered damage as a proximate consequence of the misrepresentation.  *Exxon Mobil Corp. v. Ala. Dep't of Conservation and Natural Res.*, 986 So.2d 1093, 1114 (Ala. 2007) (quoting *Saia Food Distribs. & Club, Inc. v. SecurityLink from Ameritech, Inc.*, 902 So.2d 46, 57 (Ala. 2004));

*see also McCutchen Co., Inc. v. Media General, Inc.*, — So.2d — , 2008 WL 204449, *3 (Ala. 2008) (quoting *Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001) ("The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.").

Second, fraud by omission encompasses the "suppression of a material fact which the party is under an obligation to communicate constitutes fraud." ALA. CODE § 6-5-102 (2008). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." *Id*. The elements of a fraudulent suppression claim are "(1) a duty on the part of the defendant to disclose facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his or her injury." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So.2d 61, 63 (Ala.1996)). "The question whether a party had a duty to disclose is a question of law to be determined by the trial court." *Id*. (quoting *Armstrong Business Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 676-77 (Ala. 2001)).

The case at hand could involve both types of fraud, but more clearly involves fraud by suppression. Scotz had an obligation to communicate when he wrote checks because of his relationship with GPI. To determine whether a duty to disclose exists, the following

factors are considered: (1) the relationship of the parties, (2) the relative knowledge of the parties, (3) the value of the particular fact, (4) the plaintiffs' opportunity to ascertain the fact, (5) the customs of the trade, and (6) other relevant circumstances. *Id*. (quoting *Armstrong Business*, 817 So.2d at 677.). Scotz, as an account manager of GPI, had a fiduciary relationship with GPI which is "a confidential relationship in which one person is obligated to act in another person's best interests." *Brushwitz v. Ezell*, 757 So.2d 423, 431 (Ala. 2000). The fact Scotz illegally forged checks from GPI to himself is clearly a valuable and relevant fact. Further, based on the guilty plea in the underlying criminal case, there is no question as to the illegality of his actions. GPI is entitled to summary judgment for fraud as well.

**D.     Wrongful Transfer of Title**

GPI asserts the transfer of Scotz' one-half interest in the Shelia Boulevard home to his wife constitutes a fraudulent transfer and should be set aside. *See* Doc. 40 at p. 9. The applicable state law is the Alabama Fraudulent Transfer Act ("the Act"). *See* ALA. CODE § 8-9A-1, *et seq*. "The purpose of the Alabama Uniform Fraudulent Transfer Act is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach." *Folmar & Assocs. LLP v. Holberg*, 776 So.2d 112, 117 (Ala. 2000); *see also Thompson Props*. Under the Act, "[a] transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." ALA. CODE § 8-9A-4(a).

In the case at hand, Scotz admitted in his criminal proceedings that he used the stolen funds to pay off the mortgage on his house. *See* Doc. 39, Exhibit 9. Specifically he wrote a check to Fidelity Bank in the amount of $43,134.91 on December 31, 2206. *Id*. at p. 5; *see also* Doc. 39, Exhibit 3 at p. 15, "Check 6013"; *See* Doc. 39, Exhibit 12, Satisfaction of Mortgage. On June 4, 2007, Scotz then transferred his one-half interest in the property to his wife for consideration of $100.00. *See* Doc. 39, Exhibit 13, Warranty Deed.

"Generally, inadequacy of consideration is only a 'badge' or indicium of fraud. Where, however, the consideration is substantially or grossly inadequate, fraud may be inferred as a matter of law from inadequacy alone." *J.C. Jacobs Banking Co. v. Campbell*, 406 So.2d 834, 844 (Ala. 1981). In the case with Scotz, fraud may be inferred because of the inadequacy of the consideration and the use of stolen funds to pay off the mortgage. As such, the Court should set aside the transfer of the one-half interest of the property.

Alabama law is consistent with that of those jurisdictions that hold that the effect of setting aside a fraudulent transfer is not to revest title in the debtor. *Ex parte Healthsouth Corp.*, 974 So.2d 288, 297 (Ala. 2007). The transfer is void only as to the creditor, and the creditor can execute on those assets directly. *See* Ala. Code § 8-9A-7(b) ("If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."). Consequently, GPI may execute its judgment on the one-half interest in the Shelia Boulevard home and therefore is entitled to a lien on the property.

**E.    Damages**

In an action for conversion of an instrument, the measure of liability is presumed to be the amount payable on the instrument and recovery may not exceed the amount of the plaintiff's interest in the instrument.  ALA. CODE § 7-3-420.  GPI has a full interest in the amount paid as each check cashed by Scotz.  GPI managed to stop payment on check number 7228 in the amount of $18,453.35 and therefore have no damages as to that particular check.  The remaining checks which total of $220,422.88 is the measure of damages as to the conversion claim.

"The remedy of restitution is designed to remedy the detrimental effects caused by unjust enrichment."  *Scrushy*, 955 So.2d at 1011 (quoting *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345, 1351 (Ala. 1991)).  Since restitution is designed to make whole the injured party, in this case GPI, it stands to reason GPI is entitled to $220,422.88 in damages.  Restitution is to make the party whole, therefore it would not be appropriate to award restitution in addition to the damages for the conversation claim.  It is merely another path wherein GPI can recover its lost monies.

## VI.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

(1)    Plaintiff's *Motion for Summary Judgment* (Doc. 39) be **GRANTED**.

(2)    The transfer of the one-half interest in the property at 615 Shelia Boulevard in Prattville, Alabama be set aside as fraudulently transferred.

(3) Plaintiff General Parts, Inc. be awarded damages in the amount of $220,422.80.

(4) Judgment be rendered for the Plaintiff General Parts, Inc.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **October 8, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 25th day of September, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE